JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, George Hill, appeals his conviction and sentence from the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm his finding of guilt; however, we vacate his sentence and remand the case for resentencing.
 {¶ 2} The following facts give rise to this appeal. On April 4, 2005, the victim, Brandon Davis, along with several members of the 30th Street Boys, walked to the neighborhood of the Case Court/Outhwaite Boys,[1] which is in close proximity to the Lonnie Burton Recreation Center in Cleveland, Ohio. The reason the victim and his fellow gang members went to that area was to seek revenge against the Case Court/Outhwaite Boys for physically attacking one of the members of the 30th Street Boys.
 {¶ 3} Several younger members of both gangs were seen fistfighting, screaming, and kicking each other. Brandon Greer, an older member of the 30th Street Boys, arrived and ordered the younger members to "fall back," which means to retreat to the area where the older members are standing. As the 30th Street Boys were retreating, they were chased by the Case Court/Outhwaite Boys. During the chase, the victim slipped and fell, and was kicked and punched by the Case Court/Outhwaite Boys while he was lying on the ground. Eventually, the victim was able to get up and continue his retreat.
 {¶ 4} In the meantime, several older members of the Case Court/Outhwaite Boys, including Hill, Jaron Jackson, and Gerald Williams, began to approach. It appears that Jackson pulled out a nine millimeter handgun and handed it to Williams, who began waving it in the air. The 30th Street Boys began running away in the direction of their homes, because "they knew they could not beat that gun," Williams testified.
 {¶ 5} Williams then tried to tuck the gun into his waistband, and Hill snatched it away and started shooting at the crowd of 30th Street Boys as they were running away. Eight shots were fired in rapid succession. The victim fell to the ground and died from a single gunshot wound to the back. The victim was eleven years old.
 {¶ 6} An eyewitness testified that Hill "just walked off." She stated "[h]e just appeared to have walked off in a nonchalant manner, like he wasn't really impacted by the shooting." When asked by Williams why he shot at them when they were already leaving, Hill replied, "f*** them ni**ers. They shouldn't be down here."
 {¶ 7} On April 16, 2005, Hill, along with his parents, because Hill was seventeen years old at the time of the crime, met with Detective Matlock. Hill was read his rights, and he waived them, agreeing to speak with the detective. Initially, Hill denied being involved in the shooting, but after speaking with his parents, Hill admitted, "I was in the field and shot that day." When the detective attempted to reduce his statement to writing, Hill's mother stated that they wanted to talk to an attorney.
 {¶ 8} Hill was charged with two counts of aggravated murder with firearm and gang activity specifications and one count of criminal gang activity. The criminal gang activity count was severed, and the remaining counts were tried to a jury. Hill was found guilty of the lesser included offense of murder in count one, and aggravated murder in count two. Hill was sentenced to an aggregate term of 28 years to life in prison.
 {¶ 9} Hill appeals, advancing four assignments of error for our review.
 {¶ 10} "I. The evidence at trial was insufficient to sustain a conviction and/or the verdict was against the manifest weight of the evidence."
 {¶ 11} Under this assignment of error, Hill argues that there was insufficient evidence that Hill's purpose was to cause death that day and, therefore, the verdicts are against the manifest weight of the evidence. Hill contends that it is unclear whether he fired the fatal shot and, further, that he may have perceived a legitimate threat to his personal safety when he shot at the crowd.
 {¶ 12} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 14} A person acts purposely when he or she specifically intends to cause a certain result. R.C. 2901.22(A). Because the intent of an accused dwells in his or her mind and can never be proved by the direct testimony of a third person, it must be gathered from the surrounding facts and circumstances, and the General Assembly has provided that intent to kill may be proved by inference. State v. Treesh,90 Ohio St.3d 460, 484-485, 2001-Ohio-4. See, also, In re Washington (1998),81 Ohio St.3d 337, 340.
 {¶ 15} Furthermore, it is well settled that "a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts, and intent can be determined from the surrounding facts and circumstances." State v. Carter (1995), 72 Ohio St.3d 545, 554,1995-Ohio-104. "`A firearm is an inherently dangerous instrumentality, the use of which is likely to produce death.'" State v. Seiber (1990),56 Ohio St.3d 4, 14, quoting State v. Widner (1982), 69 Ohio St.2d 267,270.
 {¶ 16} A review of the record reveals that the shots were fired in succession with no pause for anyone else to fire the gun, as Hill suggests. The eyewitnesses testified that Hill fired eight shots directly into a retreating crowd, not into the air or the ground. In addition, the evidence revealed that the victim was shot in the back two hundred eighteen feet from where the gun was fired. When asked by Williams why he shot the gun when they were already leaving, Hill replied, "f*** them ni**ers. They shouldn't be down here." Finally, Hill admitted he was "in the field and shot that day." When a person shoots into a retreating crowd of people, it can be inferred that he intended to cause a certain result.
 {¶ 17} After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proved beyond a reasonable doubt. Furthermore, there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. The jury did not lose its way.
 {¶ 18} Hill's first assignment of error is overruled.
 {¶ 19} "II. Appellant was sentenced under unconstitutional and void statutory provisions, and therefore he must be resentenced."
 {¶ 20} In light of the recent decision of the Supreme Court of Ohio inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, we vacate Hill's entire sentence and remand the case for a new sentencing hearing.
 {¶ 21} The Foster court found that judicial findings are unconstitutional andthat several provisions of Senate Bill 2 are unconstitutional. Id. The court concluded that a trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive, or more than the minimum sentences. Id. TheFoster holding applies to all cases on direct review. Id. Because the trial court sentenced Hill under unconstitutional statutory provisions, he must be resentenced.
 {¶ 22} On remand, the parties may stipulate to the sentencing court's acting on the record before it. Id. The trial court shall consider those portions of the sentencing code that are unaffected by Foster and has full discretion to impose a prison term within the statutory range. Id. The trial court is not barred from imposing consecutive sentences. Id.
 {¶ 23} Accordingly, we sustain Hill's second assignment of error.
 {¶ 24} "III. Trial counsel were ineffective in failing to request a jury instruction on reckless homicide."
 {¶ 25} In his third assignment of error, Hill contends that he was denied effective assistance of counsel because his attorney failed to request an instruction on reckless homicide pursuant to R.C. 2903.041. Hill argues that there is a reasonable probability that if the jury had been permitted to consider the charge of reckless homicide, the result of the trial would have been different.
 {¶ 26} Reversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfying the two-pronged test set forth in Strickland v. Washington (1984), 466 U.S. 668. Strickland requires that the defendant show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687-696. In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id.; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 27} Generally, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy and, therefore, does not establish ineffective assistance of counsel. SeeState v. Griffie (1996), 74 Ohio St.3d 332, 333, 1996-Ohio-71. Assuming, arguendo, that trial counsel's failure to request a reckless homicide instruction constituted deficient performance, we conclude that counsel's allegedly deficient performance in failing to so request did not prejudice Hill's case. Had trial counsel requested the trial court to instruct the jury regarding reckless homicide, the result of Hill's trial would not have been different. The Supreme Court of Ohio has adopted a two-part test to determine whether a jury instruction on a lesser included offense is necessary. State v. Kidder (1987),32 Ohio St.3d 279, 280-281. First, the trial court must determine whether the offense on which the instruction is requested is a lesser included offense of the crime charged. Id., citing State v. Deem,40 Ohio St.3d 205, paragraph three of the syllabus. Second, the trial court must determine whether the evidence adduced at trial would support an instruction on the lesser included offense. Id. at 281.
 {¶ 28} "[A] criminal offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Barnes (2002),94 Ohio St.3d 21, 25-26, 2002-Ohio-68, citing State v. Deem (1988),40 Ohio St.3d 205, paragraph three of the syllabus.
 {¶ 29} In the case at bar, after we compare the elements of the crime with which Hill was charged, aggravated murder, to the offense Hill claims is a lesser included offense, reckless homicide, we agree that reckless homicide is a lesser included offense of aggravated murder. See, also, State v. Teets, Pickaway App. No. 02CA1, 2002-Ohio-6799. The aggravated murder statute provides: "(A) No person shall purposely, and with prior calculation and design, cause the death of another * * *." R.C. 2903.01(A). The reckless homicide statute provides: "(A) No person shall recklessly cause the death of another * * *." R.C. 2903.041.
 {¶ 30} First, reckless homicide is a third degree felony that carries a lesser penalty than aggravated murder. Next, one cannot commit aggravated murder without also committing reckless homicide. SeeState v. Wright (Mar. 26, 2002), Scioto App. No. 01CA2781. If one purposefully causes the death of another with prior calculation and design, then one necessarily also recklessly causes the death of another. Teets, supra. Finally, to commit reckless homicide, one need not commit the offense with prior calculation and design. Because all three prongs of the lesser included offense test are satisfied, reckless homicide is a lesser included offense of aggravated murder. Id.
 {¶ 31} A trial court must instruct a jury regarding a lesser included offense when the evidence presented at trial would support it. State v.Thomas (1988), 40 Ohio St.3d 213, 216. In other words, a trial court must charge the jury on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Id. In determining whether the evidence reasonably supports the lesser included offense instruction, "the persuasiveness of the evidence regarding the lesser included offense is irrelevant." State v.Wilkins (1980), 64 Ohio St.2d 382, 388. Instead, the trial court must give the lesser included offense instruction, "if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." Id.
 {¶ 32} Nevertheless, an instruction is not warranted every time "some evidence" is presented on a lesser included offense. See State v.Shane (1992), 63 Ohio St.3d 630, 632-33. "To require an instruction * * * every time `some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." Shane, 63 Ohio St.3d at 633; see, also,State v. Wright (Mar. 26, 2002), Scioto App. No. 01CA2781.
 {¶ 33} Hill was charged with two counts of aggravated murder. Count one alleged that Hill did purposely with prior calculation and design cause the death of Brandon Davis, in violation of R.C. 2903.01(A). The second count alleged that Hill did purposely cause the death of Brandon Davis, who was under thirteen at the time of the crime, in violation of R.C. 2903.01(C).
 {¶ 34} Hill was found not guilty of aggravated murder with prior calculation and design but guilty of the lesser included offense of murder, purposely causing the death of another, in count one, as well as guilty of aggravated murder as charged in count two. Hill argues that the jury found, in essence, that Hill had acted without any prior thought; therefore, Hill contends that the jury could have found that Hill acted recklessly instead of purposely. A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C). A person acts purposely when it is his specific intention to cause a certain result. R.C. 2901.22(A).
 {¶ 35} After our review of the evidence in this case, we do not believe that had trial counsel requested a reckless homicide instruction, the trial court would have been required to give the instruction. Under both counts that Hill was convicted of, the jury found that he had purposely caused the death of Brandon Davis. As stated in the first assignment of error, there was sufficient evidence to prove that Hill acted purposely when he fired eight shots into a retreating crowd. We do not believe that the evidence supports an instruction on reckless homicide; therefore, trial counsel was not ineffective when he did not request a jury instruction on the lesser included offense.
 {¶ 36} Hill's third assignment of error is overruled.
 {¶ 37} "IV. Comments upon appellant's post-arrest invocation of his Fifth and Sixth Amendment Rights utilized as substantive evidence resulted in the denial of due process of law and a fair trial."
 {¶ 38} Hill claims that the state improperly introduced Hill's post-arrest, post-Miranda silence during the state's questioning of Detective Matlock. Specifically, the state elicited testimony from the detective that after Hill was advised of his Miranda rights, he indicated that he wished to waive those rights and make a statement. After Hill made an oral statement to the detective, however, Hill's mother indicated that he would not sign a written statement and requested an attorney. Hill now challenges that testimony as an improper comment on Hill's Fifth Amendment right to remain silent and Hill's Sixth Amendment right to an attorney.
 {¶ 39} In Doyle v. Ohio (1976), 426 U.S. 610, the Supreme Court of the United States explained that the Miranda warnings convey an implied assurance to the accused that the state will not use a defendant's silence against him at trial. Id. at 618. "Doyle rests on `the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" Wainwright v.Greenfield (1986), 474 U.S. 284, 291, quoting South Dakota v.Neville (1983), 459 U.S. 553, 565. "Such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt."State v. Thompson (1987), 33 Ohio St.3d 1, 4.
 {¶ 40} If a court finds a Doyle violation, the court must then determine if the error is harmless under the test set forth underChapman v. California (1967), 386 U.S. 18. State v. Smith, Cuyahoga App. No. 86690, 2006-Ohio-3156. The standard set forth under Chapman requires the state to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" in order for a constitutional error to be ignored as nonprejudicial. Id. quotingChapman, 386 U.S. at 24.
 {¶ 41} Further, in State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus, the Supreme Court of Ohio held that constitutional errors are harmless beyond a reasonable doubt "if the evidence, standing alone, constitutes overwhelming proof of the defendant's guilt." This rule was employed in assessing the prejudicial effect of Doyle errors in State v. Thompson (1987), 33 Ohio St.3d 1.
 {¶ 42} In this case, Hill was not entirely silent. After being advised of his Miranda rights, Hill waived his rights and gave an oral statement to the police. Hill, through his mother, exercised his right to remain silent when the detective told him that his oral statement was going to be put in writing.
 {¶ 43} In State v. Hankins (Sept. 2, 1993), Cuyahoga App. No. 63360, this court addressed a similar situation. In Hankins, the defendant spoke twice to the police after his Miranda rights were given. In finding no Doyle violation, this court stated: "[Defendant] did not remain silent at the time of his arrest or afterwards and cannot rely onDoyle to prevent the prosecutor from attempting to draw out what he said and did not say. Defendant's refusal to corroborate his statements to [the] police in writing may be commented on at trial." Id., citingState v. Beasley (June 7, 1993), Cuyahoga App. No. 62852; State v.Lucaj (May 17, 1990), Cuyahoga App. No. 56933.
 {¶ 44} Thus, under the circumstances of this case, it was not improper for the state to question the detective about Hill's oral statement and the reason for the lack of a written statement memorializing his oral statement. See, also, State v. Smith, Cuyahoga App. No. 86690,2006-Ohio-3156; State v. Kling, Butler App. No. CA2003-08-191,2004-Ohio-3911.
 {¶ 45} Hill's fourth assignment of error is overruled.
Finding of guilt affirmed; sentence vacated and cause remanded for resentencing.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J., and JOSEPH J. NAHRA, J.*, CONCUR
* Sitting by assignment: Judge Joseph J. Nahra, Retired, of the Eighth District Court of Appeals.
[1] Each gang is named after the street and/or neighborhood in which they live.