OPINION
{¶ 1} This matter is before us on an appeal by appellant, Samuel D. Freeman ("appellant"), seeking reversal of a judgment by the Franklin County Court of Common Pleas convicting him of aggravated murder and aggravated robbery. For the reasons that follow, we affirm the trial court's judgment. *Page 2 
 {¶ 2} On October 24, 2005, Patrick Chew ("Patrick"), and his sister Monique Chew ("Monique"), were students at Life Skills, a school located on Dublin-Granville Road in Columbus. The students were released early from classes that day, which meant that Patrick and Monique's mother was not available to pick them up at school, so the two decided to take a COTA bus home. On their way to the bus stop, Patrick and Monique stopped at a convenience store, where Patrick purchased a Black and Mild cigar to smoke. The two then rode the bus to Hudson Street and McGuffey Road, where they exited the bus and began to walk to their home nearby on Howey Road. They began walking through an alley running parallel to Hudson Street. As they walked, Patrick borrowed a lighter from Monique and lit the cigar he had purchased.
 {¶ 3} Appellant and his friend, Cortez Dozier ("Cortez"), were also students at Life Skills, although neither knew Patrick or Monique from the school. Monique testified that she had seen both appellant and Cortez before, because she believed both had attended Linden McKinley High School at the same time she had.[1] The two rode the same COTA bus as Patrick and Monique, and also got off the bus at Hudson and McGuffey. Appellant and Cortez followed Patrick and Monique into the alley, and one of the two asked if he could borrow a lighter.
 {¶ 4} Monique gave her lighter to Patrick, and continued walking toward home. As she walked, Monique looked back to make sure nothing was happening with Patrick. When she looked back a second time, Monique saw Cortez running away. Monique then looked back a third time, and saw appellant holding a gun pointed at Patrick. Monique *Page 3 
yelled and walked back toward appellant and Patrick. Monique stated that Patrick lifted his right hand toward appellant when the gun fired and Patrick fell to the ground. Monique then testified that appellant very quickly reached into Patrick's front pants pocket, and then began to run away. Monique stated that as appellant was running away, he slipped on some gravel, dropped something she could not identify, paused to pick up the object, and then continued running. Monique then went to Patrick and saw that he was bleeding from the mouth. She attempted to stop the bleeding, and then ran home to call 911.
 {¶ 5} Cortez also testified. He stated that he was the one who had asked to borrow the lighter, and that after he had used the lighter he began walking back down the alley. Cortez testified that as he walked away, appellant and Patrick were talking. Cortez heard a gunshot, looked back and saw Patrick "flinching back." Cortez then testified that he continued walking to appellant's house, arriving there after appellant.
 {¶ 6} The state also offered testimony from Denis Simiou, the owner of an automobile repair shop on Hudson Street. Simiou testified that he was on Hudson Street test-driving a vehicle that he had just completed repairing when he heard a gunshot. Simiou looked around and saw smoke and a person falling to the ground. He also testified that he saw a person running from the scene drop what he believed was a gun. The person turned to retrieve the gun and then continued running.
 {¶ 7} Patrick was taken to the hospital, where he died on November 1, 2005. The cause of death was determined to be a gunshot that entered Patrick's left chin and severed his spinal cord. A search of the clothes Patrick was wearing revealed a multi- *Page 4 
tool, a key ring and key, a condom, a calculator, his wallet and ID, and $117.10 in cash. Investigators could not determine that anything had been taken from Patrick's pockets.
 {¶ 8} On November 9, 2005, acting on an anonymous tip, police recovered a .45 caliber handgun wrapped in a dark-colored hooded sweatshirt. Testing showed that the gun, while not being in very good condition, was in operating order. A shell casing recovered from the scene of the shooting was found to match the gun, and bullet fragments recovered from Patrick's body were consistent with having been fired from the gun, although a match could not be definitively made.
 {¶ 9} Police investigators showed Monique yearbooks from Linden McKinley High School, from which she identified Cortez. Further investigation identified appellant as a friend of Cortez's. Police then prepared a photo array that included a photo of appellant. Monique identified appellant as the person she believed was the shooter from the photo array.
 {¶ 10} At trial, appellant testified on his own behalf and admitted that he was the person who shot Patrick, but claimed it was an accident. Appellant stated that Patrick had asked if either appellant or Cortez knew where he could buy a gun, and that appellant then took out the gun he was carrying to see if Patrick was interested in buying the gun. Appellant further stated that there was some question regarding the gun's condition, including that appellant told Patrick the gun might be jammed. Appellant stated that Patrick tried to take the gun from appellant's hand when it went off, and that he ran away because he did not know what else to do. Appellant denied reaching into Patrick's pocket while Patrick was lying on the ground. Appellant also testified that he arranged to have the anonymous tip regarding the gun called in and arranged for the gun to be found. *Page 5 
 {¶ 11} The grand jury indicted appellant on one count of aggravated murder and one count of aggravated robbery, each with a firearm specification. The trial court instructed the jury on the lesser-included offense of murder, but denied defense counsel's request to instruct the jury on the offense of reckless homicide. The jury returned verdicts of guilty on the charges of aggravated murder and aggravated robbery, as well as on the firearm specifications. The trial court merged the two firearm specifications. On the charge of aggravated murder, the trial court sentenced appellant to life imprisonment with parole eligibility after 30 years, plus a mandatory term of incarceration of three years for the firearm specification. On the charge of aggravated robbery, the trial court sentenced appellant to a term of nine years, and ordered that term to be served concurrently with the term on the aggravated murder sentence.
 {¶ 12} Appellant filed this appeal, alleging three assignments of error:
 First Assignment of Error
 The trial court committed reversible error and deprive [sic] Appellant of due process of law by refusing to provide the jury with an instruction on the lesser-included offense of reckless homicide.
 Second Assignment of Error
 Appellant's conviction is not supported by sufficient evidence.
 Third Assignment of Error
 Appellant's conviction is against the manifest weight of the evidence.
 {¶ 13} In his first assignment of error, appellant argues that the trial court should have instructed the jury on the lesser-included offense of reckless homicide. The decision as to whether the evidence supports giving a particular instruction is within the sound discretion of the trial court. State v. Wolons (1989), 44 Ohio St.3d 64, *Page 6 541 N.E.2d 443. Abuse of discretion connotes more than a simple error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 14} An offense is a lesser-included offense of another where (1) the offense carries a lesser penalty; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove commission of the lesser offense. City of Shaker Heights v. Mosely, 113 Ohio St.3d 329,2007-Ohio-2072, 865 N.E.2d 859. Reckless homicide is a lesser-included offense of murder and aggravated murder. State v. Hill, Cuyahoga App. No. 87645, 2006-Ohio-6425. However, a jury instruction on a lesser-included offense is not required unless the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. State v. Carter,89 Ohio St.3d 593, 2000-Ohio-172, 734 N.E.2d 345.
 {¶ 15} Appellant argues that on the evidence introduced at trial, the jury could have concluded that appellant did not act purposely, but instead acted recklessly. As provided in R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." Appellant argues that the jury could have concluded that he acted recklessly in having a loaded weapon pointed at Patrick, particularly when he knew the gun might be jammed.
 {¶ 16} Columbus Police Department criminalist Mark Hardy testified regarding the gun used in the shooting. Hardy testified that the gun did not have a hair trigger, but *Page 7 
instead would have required approximately six and a half pounds of force applied to the trigger to cause it to fire. Hardy also testified that in order to be fired, the gun would have to have had the magazine inserted, a round chambered, and the safety off.
 {¶ 17} In his testimony, appellant did not claim there was any struggle over the gun, but simply claimed that as Patrick tried to reach for the gun, it went off accidentally. Furthermore, nothing in any of the testimony would suggest that the possibility that the gun was jammed would have altered the three steps that had to be taken for the gun to fire. Given this evidence, we cannot say the trial court abused its discretion in concluding that the jury could not acquit on the charges of aggravated murder and murder, and convict on a charge of reckless homicide. Consequently, appellant's first assignment of error is overruled.
 {¶ 18} Appellant's second and third assignments of error challenge the weight and sufficiency of the evidence supporting his convictions. When reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 19} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,20 OBR 215, 485 N.E.2d 717. *Page 8 
Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 20} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. SeeState v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366,227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction."Thompkins, supra, at 387.
 {¶ 21} Appellant argues that the evidence offered fails to contradict his contention that the shooting was entirely accidental, and that the evidence further fails to establish the offense of aggravated robbery. R.C. 2903.01(B) sets forth the offense of aggravated murder by stating, in pertinent part, that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery[.]" The offense of aggravated robbery is set forth in R.C.2911.01(A), which provides, in pertinent part, that *Page 9 
"[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * (3) Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 22} Appellant argues that the evidence does not support his conviction for aggravated robbery because there was no evidence that he was committing or attempting to commit a theft offense. Specifically, appellant points to the evidence regarding the objects recovered from Patrick's pants pockets after the shooting, including a significant amount of cash, to support his contention that he did not take any property from Patrick. However, Monique testified that after Patrick fell to the ground, she saw appellant quickly reach into one of Patrick's pockets before running away. Given this evidence, the jury could reasonably have concluded that appellant was attempting to commit a theft offense by reaching into Patrick's pocket, even though it could not be determined that any property was actually taken.
 {¶ 23} Appellant also argues that the evidence offered was insufficient to show that he acted purposely in shooting Patrick, arguing that the evidence supports his claim that the shooting was an accident. However, Monique testified that she saw appellant pointing the gun at Patrick's head. Furthermore, as discussed in connection with appellant's first assignment of error, the evidence regarding the operation of the gun showed that a number of steps had to be taken before the gun could have been fired. *Page 10 
Based on this evidence, the jury could have reasonably concluded that appellant acted purposely.
 {¶ 24} Consequently, appellant's convictions were supported by sufficient evidence. Moreover, given the jury's superior position to evaluate the evidence offered, we cannot say the jury so clearly lost its way that a manifest miscarriage of justice was created. Therefore, appellant's convictions were not against the manifest weight of the evidence. Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 25} Having overruled appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
KLATT and TYACK, JJ., concur.
[1] In fact, only Cortez had attended Linden McKinley. *Page 1