[Cite as *State v. Hussein*, 2025-Ohio-4858.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 25AP-181 |
| v. | : | (C.P.C. No. 22CR-5148) |
| Assad J. Hussein, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 23, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee.

**On brief:** *Wolfe & Mote Law Group, LLC*, and *Stephen T. Wolfe*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Assad J. Hussein, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated robbery, felonious assault, and two counts of robbery. For the following reasons we affirm.

**I. Facts and Procedural History**

{¶ 2} On November 2, 2022, appellant was indicted on one count of aggravated robbery in violation of R.C. 2911.01, two counts of robbery in violation of R.C. 2911.02, and one count of felonious assault in violation of R.C. 2903.11. The charges related to an incident that occurred during which Omar Mohamed was injured. Plaintiff-appellee, State of Ohio, presented the following evidence.

{¶ 3} Mohamed testified that, on a Friday night in April 2022, he went to a local bar where he normally spends time on the weekend. On the way to the bar, he withdrew $100 cash from an ATM. In the early morning hours, Mohamed said that he was approached in the bar by someone who said his friend outside wanted to talk to him about a previous fight. Mohamed testified that he had not been in a fight but nonetheless went outside.

{¶ 4} Outside of the bar, Mohamed said there were two men waiting. Mohamed said he tried to tell them they had the wrong guy but, ultimately, one of the men hit him in the head. Mohamed testified that he then "went into defense mode, and the next thing you know I'm getting punched, kicked, and everything." (Tr. Vol. 2 at 37.) He said he fell to the ground while being attacked by multiple men and eventually lost consciousness.

{¶ 5} Mohamed testified that the next thing he remembered was talking with the EMTs and police officers at the scene. He told them his phone and wallet were missing, including his cash. Mohamed said that his head had been kicked, he was bleeding heavily and had a "busted" lip, but he declined going with the medics to the hospital. (Tr. Vol. 2 at 39-40.) Later, because his lip would not stop bleeding, he went to the hospital and received stitches.

{¶ 6} Mohamed testified that, the next day, he and his wife went back to the bar and asked to see surveillance video from a camera located outside the bar. Someone at the bar showed them the video and took still photos of the video and sent them to Mohamed's wife.

{¶ 7} The state presented six photos from the surveillance video as trial exhibits. In several of the photos, Mohamed identified appellant. In one of the photos (State's exhibit No. 5), Mohamed identified appellant kicking him while Mohamed was on the ground. Mohamed described another of the photos (State's exhibit No. 6) as showing appellant "going through" Mohamed's pockets while he was lying on the ground. (Tr. Vol. 2 at 51.)

{¶ 8} The state introduced three additional photos (State's exhibit Nos. 7 through 9) purporting to show various injuries Mohamed received as a result of the incident, including the cut to his lip, marks on his head and ear, and a bruise on his thigh. At the time of trial, Mohamed testified that he still had a scar on his lip.

{¶ 9} Mohamed also testified that, three or four days after the incident, police officers presented him with a photographic lineup from which he identified appellant.

{¶ 10} Mohamed testified that, in the days following the incident, his brother received a call from someone Mohamed believed was involved in the incident who returned his wallet, but it was missing the cash Mohamed had with him at the bar. Mohamed said his phone and keys also remained missing after the incident.

{¶ 11} The defense presented Columbus Division of Police Officer Payne Vantilburg as a witness. Officer Vantilburg testified that when he arrived on the scene it had already been secured by officers that had previously arrived. He encountered Mohamed sitting on the ground, visibly bleeding from his mouth and head. He testified that Mohamed appeared to be intoxicated. He recalled Mohamed reporting that his phone and wallet were taken from him but did not recall Mohamed mentioning his cash or keys being missing.

{¶ 12} The jury found appellant guilty of the indicted charges: one count of aggravated robbery, two counts of robbery, and one count of felonious assault. Following a sentencing hearing, the trial court merged the robbery counts into the aggravated robbery count and sentenced appellant to 36-months of community control with a suspended indefinite prison term for the aggravated robbery count to run concurrently to a suspended indefinite prison term for the felonious assault count. The community-control term required that appellant stay at a community-based correctional facility and complete the corresponding program requirements.

{¶ 13} Appellant timely appeals.

## II. Assignments of Error

{¶ 14} Appellant assigns the following two assignments of error for our review:

[I.] The convictions were not supported by sufficient evidence.

[II.] The verdicts were against the manifest weight of the evidence.

## III. Discussion

{¶ 15} Under the first assignment of error, appellant challenges the sufficiency of the evidence supporting his convictions. In the second assignment of error, appellant argues his convictions are against the manifest weight of the evidence.

{¶ 16} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 1997-Ohio-52, paragraph two of the syllabus. Accordingly, we set forth the relevant standards of review for each.

{¶ 17} "[W]hether the evidence is sufficient as a matter of law to support a conviction involves a determination of whether the state met its burden of production at trial." *State v. Harris*, 2023-Ohio-3994, ¶ 14 (10th Dist.), citing *State v. Smith*, 2004-Ohio-4786, ¶ 16 (10th Dist.); *State v. Frazier*, 2007-Ohio-11, ¶ 7 (10th Dist.); *Thompkins* at ¶ 23. In a sufficiency challenge, an appellate court does not weigh the evidence; rather, the court determines " ' "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *Harris* at ¶ 14, quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court "essentially assume[s] the state's witnesses testified truthfully and determine[s] if that testimony and any other evidence presented at trial satisfies each element of the crime." *Harris* at ¶ 14, citing *State v. Watkins*, 2016-Ohio-8272, ¶ 31 (10th Dist.), citing *State v. Hill*, 2008-Ohio-4257, ¶ 41 (10th Dist.). Thus, evidence is sufficient to support a conviction where, if believed, that evidence would permit any rational trier of fact to conclude that the state proved each element of the offense beyond a reasonable doubt. *Harris* at ¶ 14, citing *Frazier* at ¶ 7, citing *Jenks* at paragraph two of the syllabus.

{¶ 18} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at ¶ 23, citing *State v. Robinson*, 162 Ohio St. 486 (1955). "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 45 (1982), citing *Jackson v. Virginia*, 443 U.S. 307 (1979). "To reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." *Thompkins* at paragraph three of the syllabus, applying Ohio Const., art. IV, § 3(B)(3).

{¶ 19} A manifest weight claim "attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion." *Harris* at ¶ 15, citing *State v. Richey*, 2018-Ohio-3498, ¶ 50 (10th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179,

¶ 11-13, citing *Thompkins*, 1997-Ohio-52, at ¶ 23-24. Although the evidence may be sufficient to sustain a guilty verdict, a manifest weight challenge requires a different type of analysis. *Harris* at ¶ 15, citing *State v. Walker*, 2003-Ohio-986, ¶ 43 (10th Dist.). The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. *State v. Petty*, 2017-Ohio-1062, ¶ 60 (10th Dist.), citing *State v. Boone*, 2015-Ohio-2648, ¶ 49 (10th Dist.), citing *Thompkins* at ¶ 24.

{¶ 20} When presented with a manifest weight challenge, an appellate court sits as a " 'thirteenth juror' and may disagree 'with the factfinder's resolution of the conflicting testimony.' " *Harris*, 2023-Ohio-3994, at ¶ 16, quoting *Thompkins* at ¶ 25, citing *Tibbs* at 42. In making this determination, an appellate court " 'review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 21} Although an appellate court reviews credibility when assessing the manifest weight of the evidence, the court must be mindful that determinations regarding witness testimony and the weight of testimony are primarily for the trier of fact. *Harris* at ¶ 17, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This is so because the trier of fact is best able " 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 22} " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 1997-Ohio-52, at ¶ 25, quoting *Martin* at 175. Further, reversal of a jury verdict on manifest weight grounds requires unanimous concurrence of all three judges on the court of appeals panel reviewing the case. *Harris* at ¶ 18, citing Ohio Const., art. IV, § 3(B)(3); *State v. Short*, 2024-Ohio-92, ¶ 13 (10th Dist.), citing *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 2-4, citing *Thompkins* at paragraph four of the syllabus.

{¶ 23} Appellant first argues there is not sufficient evidence to support his convictions for aggravated robbery and robbery because there is not sufficient evidence that he committed a theft offense and that the aggravated robbery and robbery verdicts were against the manifest weight of the evidence.

{¶ 24} A theft offense is an element of aggravated robbery and robbery. *See* R.C. 2911.01(A) (defining aggravated robbery to include the commission of or attempt to commit "a theft offense") and R.C. 2911.02(A) (defining robbery to include the commission of or attempt to commit "a theft offense"). The relevant definition of the offense of theft states: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [w]ithout the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(A)(1). *See State v. Workman,* 2024-Ohio-167, ¶ 33 (10th Dist.).

{¶ 25} Here, Mohamed testified that he was missing his wallet, cash, phone, and keys after the incident. Although his wallet was returned, it did not contain any cash. The state also presented still photos purporting to show appellant going through Mohamed's pockets while Mohamed was laying on the ground. A reasonable jury could infer that appellant took some or all of the missing items while the victim was incapacitated. Thus, we find the state presented evidence legally sufficient to prove a theft offense to support the aggravated robbery and robbery offenses. We also find appellant has failed to demonstrate that the guilty verdicts on aggravated robbery and robbery were against the manifest weight of the evidence.

{¶ 26} Appellant also argues the state failed to present sufficient evidence of the element of serious physical harm to support his felonious assault conviction and that the guilty verdict on felonious assault was against the manifest weight of the evidence.

{¶ 27} R.C. 2903.11 defines felonious assault in relevant part as "knowingly" causing "serious physical harm to another." Pursuant to R.C. 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶ 28} R.C. 2901.01(A)(5) lists several types of harm that describe "serious physical harm to persons," including "[a]ny physical harm that involves . . . some temporary,

substantial incapacity," R.C. 2901.01(A)(5)(c), and "[a]ny physical harm that involves some permanent disfigurement," R.C. 2901.01(A)(5)(d). Ohio appellate courts have held that an injury that requires stitches constitutes serious physical harm for purposes of a felonious assault conviction. *See State v. Major Essix Menifield*, 2024-Ohio-2981, ¶ 14 (5th Dist.) ("[T]his Court has recognized an injury requiring staples or stitches constitutes serious physical harm."); *State v. Tripplett*, 2023-Ohio-4644, ¶ 11 (8th Dist.) (noting that the Eighth District Court of Appeals has "consistently held" that the need for stitches constitutes serious physical harm); *State v. Brime*, 2009-Ohio-6572, ¶ 34-35 (10th Dist.) (finding that the weight of the evidence supported a finding of serious physical harm where the victim received stitches and sustained a permanent scar).

{¶ 29} Mohamed testified that he fell to the ground and lost consciousness after he was hit by one of the men outside the bar. He presented a photograph showing that appellant had kicked him while he was on the ground. Mohamed also testified that his lip was injured as a result of the incident, and he presented a photo exhibit showing that he received stitches in his lip. Additionally, he testified to having a visible scar on his lip at the time of trial. Officer Vantilburg also testified that Mohamed was bleeding from his mouth when the officer arrived on the scene and that Mohamed's injuries appeared to be severe.

{¶ 30} Viewing the foregoing evidence in the light most favorable to the state, we find there was sufficient evidence that appellant knowingly caused Mohamed serious physical harm. We also find that appellant has failed to demonstrate that the guilty verdict on felonious assault was against the manifest weight of the evidence.

## IV. Conclusion

{¶ 31} We find there was sufficient evidence to convict appellant of aggravated robbery, robbery, and felonious assault. Additionally, we find that appellant failed to demonstrate the convictions were against the manifest weight of the evidence. Therefore, we overrule appellant's first and second assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and BOGGS, JJ., concur.

———————